[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-10104
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 16, 2011
JOHN LEY
CLERK

D.C. Docket No. 8:10-cv-00430-SDM-EAJ

ALFRED BARR,

Plaintiff-Appellant,

versus

DAVID GEE,
Sheriff of Hillsborough County,
individually,
PAUL FITTS,
Hillsborough County Deputy,
individually,
KRISTY UDAGAWA,
Hillsborough County Deputy,
individually,
CRAIG LATIMER,
Major Deputy,
individually,
JOHN DOES, 1 through 3, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 16, 2011)

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Alfred Barr appeals *pro se* from the dismissal of his civil-rights suit,

brought pursuant to 42 U.S.C. §§ 1983 and 1985, for failure to state a claim.[1]  He

argues that the district court erred in dismissing the claims in his first amended

complaint as to 11 defendants on grounds of various immunities and bars to suit,

and that he should have been permitted to replead those claims in his second

amended complaint.  He further claims that the district court erred in finding that

his second amended complaint failed to state claims of constitutional violations by

---

[1] Barr's briefs to this Court primarily seek review of the district court's denial of (1) his post-judgment motion for reconsideration of the dismissal of the second amended complaint and (2) his motion for leave to make a post-judgment amendment to said complaint.  Both his original and amended notices of appeal were filed prior to the district court's rulings on the two post-judgment motions, and he did not further amend his notice of appeal to incorporate the post-judgment rulings.  As such, we lack jurisdiction to review the denial of these two motions. *See* Fed.R.App.P. 4(a)(4)(B)(ii) (stating that a party intending to challenge an order disposing of a post-judgment motion must timely file a notice of appeal or amended notice of appeal from such order); Fed.R.App.P. 4(c)(1)(B) (stating that the notice of appeal must specify the judgment or order being appealed).  Where appropriate, we liberally construe Barr's challenge to these motions as part of his challenge to the district court's dismissal of his complaints. *See Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) (stating that *pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and, thus, are to be liberally construed).

the remaining defendants.  For the reasons set forth below, we affirm.

## I.

## A.

In February 2010, Alfred Barr filed suit *pro se* against various individuals and entities, pursuant to 42 U.S.C. §§ 1983 and 1985.  Although some allegations in the 137-page complaint centered around the treatment of his minor child, he sued only in his own name, not as next friend of the child.  Upon the named defendants' motions to dismiss, the district court dismissed the complaint as a shotgun pleading that failed to comply with Federal Rules of Civil Procedure 8 and 10.  The court ordered Barr to file a compliant amended complaint of no more than 30 pages, and it warned that failure to comply would result in dismissal.

Barr timely filed a first amended complaint, again suing only in his own name.  He alleged 17 counts of civil-rights violations by Hillsborough County, Florida, and various individuals:

*Hillsborough County Sheriff's Office ("HCSO") defendants*

(Count 1)     Sheriff David Gee
(Counts 2 & 7)   Deputy Paul Fitts
(Counts 3 & 7)   Deputy Kristy Udagawa
(Count 4)     Major Craig Latimer of Child Protective Services
(Count 5)     Certain John Doe defendants

*Hillsborough County ("County") defendants*

3

(Counts 6 & 15)  Hillsborough County
(Count 17)   Charles Allen, code enforcement officer

*State Attorney's Office defendants*

(Count 8)     State Attorney Mark A. Ober
(Count 9)     Division Chief Sean Keefe
(Count 10)    Assistant State Attorney Matthew Smith
(Count 11)    Assistant State Attorney Linda Grable
(Count 12)    Division Chief Steve Udagawa
(Count 13)    Assistant State Attorney Vanessa H. Hall

*Public Defender for the Thirteenth Judicial Circuit of Florida*

(Count 14)   Public Defender Julianne M. Holt

*Hillsborough County Public Schools ("HCPS") defendants*

(Count 16)   Superintendent MaryEllen Elia
(Count 16)   Guidance counselor Cathy Gatchell
(Count 16)   Teacher Suzanne Boner

In general, Barr alleged that one or more individuals (a) entered and searched his home without a warrant or probable cause, (b) impermissibly introduced into public court records confidential reports containing allegations of child abuse, (c) detained and interrogated his child on more than one day, (d) coerced the child into accusing Barr of felony child abuse, (e) committed perjury in his criminal proceedings, (f) treated Barr differently on the basis of race by refusing to permit him to file an excessive-force complaint, (g) created a racially hostile environment across multiple agencies with respect to him and his

4

child, and (h) caused Barr broken teeth, broken household furniture, loss of income, destruction of business and reputation, and seven days of incarceration without medical attention or contact with an attorney.

Count 1 alleged that Gee "authorized or permitted acts and subscribed to[] or established official policies or customs" that infringed upon the rights of Barr and his child, that he conspired with others to violate Barr's right to due process, and that he was negligent in his training and supervision of certain employees. Count 2 alleged that Fitts used "excessive force in the execution of a[n] unlawful and warrantless entry, arrest, imprisonment, [and] unreasonable search" of Barr's home, and that Fitts kidnapped his child, falsified incident reports, committed perjury, and conspired to deprive Barr and his family of their constitutional rights. Count 3 incorporated the claims in Counts 1 and 2 against Kristy Udagawa. Count 4 alleged that Latimer condoned improper conduct by his employees, including (a) "racially hostile" searches and seizures, (b) "disclosure or distribut[ion of] false child abuse reports or information to" the State Attorney's Office, and (c) coercion of statements from Barr's child.

Count 5 alleged that various John Doe defendants, acting under the supervision of Gee, Latimer, Ober, Keefe, Steve Udagawa, and Elia, participated in the conduct described in the other counts. Count 6 alleged that Hillsborough

5

County was vicariously liable for the conduct of Fitts and Kristy Udagawa, and that the County had a "policy of inadequate training or supervision" and a "custom of tolerance or acquiescence of federal rights violations . . . against [Barr] and [his] minor child." Count 7 incorporated the allegations of Counts 2 and 3, and further alleged that the actions of Fitts and Kristy Udagawa constituted "wanton and extreme" conduct that exceeded the scope of law and policy.

Count 8 alleged that Ober (a) knew or should have known about the warrantless entry and use of excessive force during the arrest, (b) condoned, in his capacity as supervisor, the racially selective prosecution of similarly situated defendants, (c) failed to supervise and evaluate his employees adequately, (d) participated with his staff in the fabrication of false evidence, and (e) generally conspired with certain other defendants to deprive Barr of his constitutional rights. Count 9 alleged that Keefe "failed to truthfully[] or properly report the facts" and "participated in the planned cover[-]up of violations against minor children," including kidnapping and interference with custody. Count 10 alleged that Smith (a) collected and created false information regarding Barr's child, and (b) conspired with Keefe, Steve Udagawa, and Holt, the Public Defender, to obstruct witness depositions and to make false representations to the court. Count 11 alleged that Grable participated in Ober's and Keefe's wrongdoing and

6

conspired to fabricate false information that affected Barr's eligibility for bail. Count 12 alleged that Steve Udagawa offered legal advice to Ober and Keefe that assisted them in the conduct specified in Counts 8 and 9. Count 13 alleged that Hall "did nothing to prevent harm or injury" to Barr arising out of Ober's and Keefe's conduct.

Count 14 alleged that Holt, who "possessed and exercised final authority on behalf of [the Public Defender's] Office with respect to [Barr's] legal defense," failed to protect Barr's constitutional rights, conspired with state officials, acted in conflict with Barr's interests, and knew or should have known that her staff either participated in or disregarded the fabrication of evidence. Count 15 alleged that Hillsborough County was vicariously liable for the misconduct described in the other counts, and that the other defendants' conduct, coupled with their supervisors' failure to take follow-up action against that conduct, supported his allegation of a custom or policy. Count 16 alleged that Gatchell and Boner, who were "influenced and supported" by Elia, (a) failed to provide a safe environment for Barr's child, (b) conspired to violate the rights of Barr and his child, (c) held the child "captive" on several occasions as they tried to "coerce" him into describing criminal behavior by Barr, (d) engaged in a discriminatory practice toward the child, and (e) created a racially hostile environment through the

7

interrogation. Count 17 alleged that Allen, in the course of executing his job duties, (a) committed a felony battery against Barr by trespassing in Barr's home and placing a hand on Barr, (b) provided false information to a law-enforcement officer, and (c) conspired with his employer to cover up his wrongdoing.

All of the named defendants moved to dismiss, alleging, as appropriate: (1) failure to satisfy pleading standards; (2) failure to state a claim of a constitutional violation or injury; (3) failure to state a claim for municipal, supervisory, or public-defender liability; (4) qualified immunity; and (5) prosecutorial immunity.

Barr responded that his allegations were sufficiently detailed and that no individual defendant was entitled to qualified immunity. As to the County, he argued that Allen's "conduct was condoned[ and] approved" by the County, that County employees participated in actionable violations, and that these violations were part of a pattern or series of incidents that supported his "general allegation of a custom or policy with racial overtones." As to Allen, Barr responded that Allen was not a law-enforcement officer and, thus, violated "municipal policy and training" when he "force[d] himself into" Barr's home, "place[d] his hands upon" Barr, and made a "false report[]" that led Fitts to arrest Barr.

As to Holt, Barr responded that (1) public defenders who conspire with state

8

officials are not immune from § 1983 liability, (2) Holt had provided him with ineffective assistance of counsel, particularly in her failure or refusal to make certain arguments upon request, and (3) this failure fit into a "history of negligence, and failure to protect the rights of . . . non-Caucasian litigants."

As to the State Attorney's Office defendants, Barr argued that (1) Ober, personally or through his employees, participated in the creation of false information to be presented to the trial court, (2) Barr could sue the defendants in their personal capacity without establishing a connection to a policy or custom, (3) Ober promoted an official policy or custom, and (4) prosecutors are not absolutely immune for conduct such as evidence-gathering.

As to the HCSO defendants, Barr responded that (1) Gee authorized specific employees to act, (2) Gee knew "the background, custom and policies of certain employee[s] and failed to properly supervise" them, (3) Gee knew or should have known of the actions taken against the rights of Barr and his child but did nothing to correct the behavior, (4) Fitts and Kristy Udagawa acted in their capacity as state officers, and (5) Latimer acted as a state officer when, in his supervisory capacity, he condoned "hostile search[es] and seizures, interrogations of [Barr's] minor child, [and] intimidation [of] a minor child in concert with HCPS."

Finally, Barr responded that the HCPS defendants were state actors who

9

illegally detained, searched, and interrogated his child, fabricated evidence to establish reports of child abuse, and improperly disclosed such reports.

The district court granted all six motions to dismiss, dismissing with prejudice Counts 1, 4, 6, 8 to 15, and the portion of Count 16 pertaining to Elia, while dismissing without prejudice Counts 2, 3, 5, 7, 17, and the remainder of Count 16. Specifically, the court found that Counts 6 and 15 sought to hold the County vicariously liable for the officers' actions, which was not permissible under § 1983. A § 1983 claim would only be cognizable against the County if Barr's rights were violated by the enforcement of a County policy or custom, but the complaint failed to allege that any County ordinance caused his injury or that a County employee with final decision-making authority ordered the conduct that led to the alleged injury. As to Holt, the court found that Count 14 made only vague and conclusory allegations of a conspiracy, without alleging any fact showing an agreement between Holt and another to deprive Barr of his rights, and that a public defender does not act under color of state law when performing her traditional functions as criminal defense counsel.

As to the State Attorney's Office defendants, the court found that Barr's allegations in Counts 8 through 13 fell within the scope of all six defendants' roles as government advocates and that Barr failed to allege any factual foundation for

his assertion that the prosecutors conspired to fabricate evidence. Thus, the defendants were entitled to absolute prosecutorial immunity. Furthermore, insofar as Count 8 challenged Ober's actions as a supervisor, Barr had failed to make the required showing that Ober participated in the alleged constitutional violation or that a policy or custom of the State Attorney's Office had injured Barr.

As to the allegations in Counts 1, 4, and 16 of supervisor liability against Gee, Latimer, and Elia, the court found that the complaint failed to allege (1) that Elia participated in the questioning of Barr's child or that widespread abuse notified Elia of a continuing problem, (2) that Gee or Latimer participated in the arrest and detention of Barr, or (3) that any incident other than the arrest of Barr would have notified Gee or Latimer of widespread abuse that would support a failure-to-train claim.

Finally, as to Counts 2, 3, 5, 7, 17, and the remainder of Count 16, the court found that the conclusory factual allegations against Allen, Gatchell, Boner, Fitts, Kristy Udagawa, and unidentified sheriff's deputies failed to establish a constitutional violation. Nevertheless, because the facts surrounding the claims against these defendants remained unclear, the court dismissed these counts with leave to amend.

Barr moved for reconsideration, seeking leave to reassert his claims against

11

the first 11 defendants in the second amended complaint. The court found that the motion was frivolous and struck it for failure to comply with M.D. Fla. R. 3.01.

B.

Barr's second amended complaint alleged claims against Allen, Gatchell, Boner, Fitts, Kristy Udagawa, and the John Doe defendants. He alleged that Allen "forced himself" into Barr's home and "struck" Barr, upon which both Barr and Allen called 911. Fitts and Kristy Udagawa responded to the 911 calls and spoke with Allen. Fitts allegedly then "forced his way into" Barr's home, Fitts and Kristy Udagawa "beat[] Barr into submission" and took him into custody, and Fitts and the John Doe defendants searched his home. Later, while Barr was being transported to jail, Fitts removed Barr's child from the school bus and transported him to the Department of Child and Family Services because "Barr refused to confess to the charges." Barr further alleged that Gatchell, Boner, and two investigators from Child Protective Services "usurped Barr's parental right to direct the care, control, and upbringing of [his] child and the legal authority to control his child's behavior and social life" when, without probable cause, they instituted child-abuse reports and detained and interrogated the child in order to "coerce" him into admitting "to having been abused, neglected and left alone for three days without food, heat or adult supervision." He added that, during his

12

criminal trial, Fitts and Kristy Udagawa gave conflicting testimony regarding whether they had probable cause to enter or search Barr's home and whether Fitts had been instructed to take custody of Barr's child. Barr noted that the jury acquitted him of the charges. He also alleged racial discrimination on the ground that the defendants in this and the first amended complaint, all of whom are white, violated the rights of Barr, who is African-American.

In Counts 1, 2, and 4, Barr alleged that Fitts and Kristy Udagawa acted under color of state law and that their actions violated the First, Fifth, Eighth, and Fourteenth Amendments. He alleged that they caused him "bodily injury[,] . . . pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical, dental care and treatment[,] loss of earnings, loss of ability to earn money, and aggravation of previously existing condition." Count 3 alleged that various John Doe defendants were "a supporting cast" in the course of conduct because they "condoned or failed to prevent" the unconstitutional conduct. Count 5 alleged that Gatchell and Boner acted under color of state law and conspired with state officials, and that their conduct violated the Fourth, Sixth, and Fourteenth Amendments. Count 6 alleged that Allen acted under color of state law and participated in a scheme with state officials to create false law-enforcement reports, unlawfully arrest Barr, and cover up the criminal

13

actions of state officials, in violation of the Fourteenth Amendment. This count

further alleged that Allen "touched or struck" Barr, thus causing him "bodily and

mental harm" in violation of state tort law and the Fourteenth Amendment.

All of the named defendants moved to dismiss on grounds of failure to state

a claim and entitlement to qualified immunity. In particular, Allen noted that the

first amended complaint alleged only that Allen "plac[ed] his hand upon" Barr and

knowingly provided false information to a law-enforcement officer, but that the

second amended complaint asserted that Allen had "touched or struck" Barr,

which Allen viewed as an apparent attempt to "up the ante" for the claim. Barr did

not timely respond to these motions to dismiss.

The district court found that "Barr's filings ha[d] shown utter disregard for

either the rules of the court or the pleading standards required to sustain an

action." The second amended complaint failed to remedy the deficiencies

identified in the two previous complaints, and Barr had not responded to the most

recent motions. Even when "generously construed," the second amended

complaint failed to state a claim against any defendant, and Barr had already been

warned of the possibility of dismissal. Because Barr had failed to state a claim or

to respond to the motions to dismiss, the court dismissed the case with prejudice.

II.

14

We review *de novo* the dismissal of a complaint for failure to state a claim, accepting as true the allegations in the complaint. *Long v. Satz*, 181 F.3d 1275, 1278 (11th Cir. 1999). The district court's denial of a motion for reconsideration is reviewed for abuse of discretion. *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1254 (11th Cir. 2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (quotations, citations, and alteration omitted). Thus, the complaint must set forth enough facts to state a claim "that is plausible on its face." *Id.* at 570, 127 S.Ct. at 1974. Section 1983 requires the defendant to have caused a constitutional deprivation while acting "under color of any [state] statute, ordinance, regulation, custom, or usage."

## III.

### A.

Although counties and other local government entities are "persons" within the scope of § 1983 and, thus, are subject to liability, the plaintiff may not rely

15

upon the theory of *respondeat superior* to hold a county liable. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). "It is only when the execution of the government's policy or custom infl[i]cts the injury that the municipality may be held liable." *Id.* (quotations and alteration omitted). A county does not incur § 1983 liability solely for injuries caused by its employees, and the mere fact that a municipal employee caused an injury does not imply municipal culpability and causation. *Id.* "Instead, to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Id.* An "isolated incident, however unfortunate, does not demonstrate evidence of the County's 'persistent' or 'widespread' policy." *Id.* at 1290-91.

"Municipal policy or custom may include a failure to provide adequate training if the deficiency evidences a deliberate indifference to the rights of its inhabitants." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009) (quotation omitted). In order to establish deliberate indifference, the "plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Id.* (quotation omitted). A municipality may be put on

16

notice if either (1) the municipality is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training, or (2) the likelihood for a constitutional violation is so high that the need for training would be obvious. *Id.*

Counts 6 and 15 primarily alleged that the County was vicariously liable for the misconduct described in various other counts. Although Barr asserted that the County had a "custom" of tolerating violations of his and his child's constitutional rights, he offered no factual allegations to support a plausible inference that such a custom existed. Instead, he relied only on the employees' conduct in this particular instance and the supervisors' alleged failure to punish the employees afterward. As employees' actions do not imply municipal liability absent an official policy or custom, and a single incident does not support an inference of such a policy, the district court did not err in finding that Barr had failed to state a claim for municipal liability. *See McDowell*, 392 F.3d at 1290-91. Insofar as Barr alleged a failure to train, he merely asserted that the purported violation of his rights in this incident showed that a "policy of inadequate training or supervision" must have existed. He did not allege facts supporting a plausible inference either that the County was on notice beforehand of a need to train in this area, or that the County made a deliberate choice not to do so. *See Twombly*, 550 U.S. at 555, 570,

17

127 S.Ct. at 1964-65, 1974; *Lewis*, 561 F.3d at 1293.  Thus, the district court did not err in dismissing the claims against the County.

B.

State public defenders do not act under color of state law, even when appointed by officers of the courts.  *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985).  Thus, no § 1983 claim may be brought against them unless they are alleged to have conspired with someone who did act under color of state law.  *Id.*

Barr alleged that Holt committed malpractice in the course of representing him in the criminal proceedings.  He also asserted that Holt conspired with state officials, but he alleged no facts supporting an inference of such a conspiracy other than the allegedly inadequate representation.  The district court did not err in finding that Barr had failed to sufficiently allege a conspiracy and, therefore, that his malpractice claim was not cognizable under § 1983.  *See Twombly*, 550 U.S. at 555, 570, 127 S.Ct. at 1964-65, 1974; *Wahl*, 773 F.2d at 1173.

C.

"[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."  *West v. Tillman*, 496 F.3d 1321, 1328 (11th Cir. 2007) (quotation omitted).  To state a claim against a supervisory defendant, the plaintiff must

18

allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct. *See id.* at 1328-29 (listing factors in context of summary judgment). A supervisor cannot be held liable under § 1983 for mere negligence in the training or supervision of his employees. *Greason v. Kemp*, 891 F.2d 829, 836-37 (11th Cir. 1990).

Barr asserted, without factual support, that (1) Gee authorized actions and subscribed to official policies or customs that infringed on Barr's rights, (2) Gee was negligent in his training and supervision of his employees, (3) Latimer condoned improper conduct by his employees, and (4) Elia influenced and supported Gatchell and Boner. He did not allege any facts supporting a plausible inference that these three individuals were personally involved in the alleged misconduct, that they directed the action or knowingly failed to prevent it, or that a history of widespread abuse had put them on notice of an alleged deprivation. *See West*, 496 F.3d at 1328-29. He also failed to identify the purported policies or customs by which Gee allegedly infringed on his rights, *see Twombly*, 550 U.S. at

19

555, 570, 127 S.Ct. at 1964-65, 1974; *West*, 496 F.3d at 1328-29, and a claim of negligence in training or supervision of Gee's employees is not cognizable under § 1983, *see Greason*, 891 F.2d at 836-37. Accordingly, the district court correctly found that Barr had failed to state a claim against any of these three defendants.

D.

A claim of prosecutorial immunity may be asserted in a Rule 12(b)(6) motion to dismiss. *See Long*, 181 F.3d at 1278-79. A prosecutor is absolutely immune from suit for all actions that he takes while performing his function as an advocate for the government. *Rehberg v. Paulk*, 611 F.3d 828, 837-38 (11th Cir. 2010), *cert. granted*, 131 S.Ct. 1678 (2011). The prosecutorial function includes initiation of criminal prosecution, appearance in judicial proceedings, prosecutorial conduct before grand juries, statements made during trial, examination of witnesses, and presentation of evidence in support of a search warrant at a probable-cause hearing. *Id.* Thus, "even if [the prosecutor] knowingly proffered perjured testimony and fabricated exhibits at trial, he is entitled to absolute immunity from liability for doing so." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279-80 (11th Cir. 2002). A prosecutor is not entitled to absolute immunity for fabricating evidence, as investigating and gathering evidence falls outside the prosecutorial function, though he may be entitled to

20

qualified immunity for such conduct. *Rehberg*, 611 F.3d at 841.

Insofar as the State Attorney's Office defendants were not sued in their capacities as supervisors, Barr primarily alleged that they had engaged in misconduct related to witness depositions, statements made during court appearances, evidence introduced in court, and the decision to initiate the prosecution. The district court correctly found that the defendants were absolutely immune from suit for these actions, even if they knowingly proffered false testimony or evidence. *See Rehberg*, 611 F.3d at 837-38; *Rowe*, 279 F.3d at 1279-80. To the extent that Barr alleged that one or more of the attorneys "collected" or "created" false evidence, such conduct would not be protected by prosecutorial immunity. *See Rehberg*, 611 F.3d at 841. Nevertheless, Barr's assertion to this effect was unsupported by any factual allegations permitting an inference that any attorney participated in the evidence-gathering stage. *See Twombly*, 550 U.S. at 555, 570, 127 S.Ct. at 1964-65, 1974. Thus, Barr's complaint did not sufficiently allege that the State Attorney's Office defendants engaged in misconduct outside the bounds of prosecutorial immunity. *See id.*; *Rehberg*, 611 F.3d at 837-38, 841. Finally, a ruling on the immunity issue was not premature at this stage of the proceedings. *See Long*, 181 F.3d at 1278. Accordingly, the district court did not err in dismissing the complaint in this respect.

Furthermore, insofar as Ober was sued in his supervisory capacity, Barr merely asserted, without support, that Ober condoned and failed to prevent the other defendants' alleged misconduct.  He did not allege facts that would support this assertion, and he did not allege a history of widespread abuse or the existence of a custom or policy that would support holding Ober liable for the conduct of his employees.  *See West*, 496 F.3d at 1328-29.  To the extent that he alleged Ober's personal involvement in the purported constitutional violations, Ober was absolutely immune from suit for such conduct, as described above.  *See Rehberg*, 611 F.3d at 837-38.  Thus, dismissal of the suit in this respect was appropriate.

E.

Although Barr contends that he should have been permitted to amend his complaint a second time as to all 11 of these defendants, he does not indicate how he would have cured the foregoing deficiencies if he had been permitted to do so, and the record does not suggest any additionally available facts or legal theories that would have affected the outcome.  Thus, the district court did not abuse its discretion in striking Barr's motion for reconsideration of the dismissal with prejudice in part of his first amended complaint.  *See Corwin*, 475 F.3d at 1254.

IV.

An arrest does not violate the Fourth Amendment if it is supported by

22

probable cause. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Id.* (quotation omitted).

"[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than a 'substantive due process' approach." *Reese v. Herbert*, 527 F.3d 1253, 1261 n.11 (11th Cir. 2008) (quotation omitted). We determine whether the amount of force was proper by asking whether a reasonable officer at the scene would have believed that the level of force used was necessary in the situation. *Zivojinovich v. Barner*, 525 F.3d 1059, 1072 (11th Cir. 2008). Use of only *de minimis* force does not violate the Fourth Amendment, as long as the arrest or detention was otherwise lawful. *Id.* Where more than *de minimis* force is used, we assess the reasonableness of the force according to the facts and circumstances of the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Lee v. Ferraro*,

284 F.3d 1188, 1197-98 (11th Cir. 2002) (quotation omitted).

Barr alleged that Fitts and Kristy Udagawa responded to simultaneous 911 calls from his home, where Allen accused Barr of battering him. In reliance upon Allen's statement, Fitts entered Barr's home and arrested Barr, with assistance from Kristy Udagawa. During the arrest, one or both of the officers "beat[] Barr into submission." Later, while Barr was being transported to jail, Fitts met his child's school bus at the house and transported the child to the Department of Child and Family Services. Barr made a rote allegation of bodily injury, mental harm, and monetary damages resulting from their conduct, but he did not describe his injuries or how the officers' conduct caused any of these purported damages.

Thus, Barr admitted that the officers arrested him on the basis of a victim's statement, and he did not allege facts to indicate that their reliance on that statement was unreasonable. Accordingly, probable cause for the arrest appears on the face of his second amended complaint. *See Skop*, 485 F.3d at 1137. The officers were permitted to use a reasonable amount of force during the arrest, and, despite his conclusory assertion that the force was "excessive," Barr did not describe the "beating" or otherwise allege facts permitting a plausible inference that the force they used was unreasonable. *See Zivojinovich*, 525 F.3d at 1072. Indeed, Barr's admission that they beat him "into submission" suggests that they

24

used the amount of force necessary to subdue his efforts to resist or to harm them. *See Lee*, 284 F.3d at 1197-98. Finally, Barr did not clearly allege the constitutional violation or resulting injury to himself that he believed to have arisen from the taking of his child into protective custody, and even when the complaint is broadly construed, *see Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006), no such allegations can be gleaned from the conclusory assertion that Fitts's action amounted to "kidnapping." Accordingly, the district court did not err in finding that Barr had failed to state a claim against Fitts and Kristy Udagawa.

As to Allen, Barr alleged only that Allen "touched or struck" him, thus causing "bodily and mental harm." He did not describe Allen's conduct or the injuries that allegedly resulted from that conduct. Barr also did not explain the federal violation that he believed to have occurred, relying instead on state tort law and an ambiguous citation to the Fourteenth Amendment. Barr's vague and conclusory allegations were wholly insufficient to state a claim against Allen. *See Twombly*, 550 U.S. at 555, 570, 127 S.Ct. at 1964-65, 1974.

Barr alleged that Gatchell and Boner removed his child from class on two different occasions in order to question the child about suspected abuse or neglect. He did not explain how he believes this conduct "usurped" his right "to direct the

25

care, control, and upbringing of [his] child and . . . to control his child's behavior and social life." He further asserted that Gatchell and Boner violated the Fourth, Sixth, and Fourteenth Amendments, but he did not explain how he believed their conduct violated his, rather than his child's, rights under these amendments. Again, his vague and conclusory allegations were insufficient to state a claim for relief. *See Twombly*, 550 U.S. at 555, 570, 127 S.Ct. at 1964-65, 1974.

Finally, Barr's allegation of a conspiracy among Allen, Fitts, and Kristy Udagawa appears to be based solely on the fact that the officers arrested Barr on the basis of Allen's statement, and his allegation of a conspiracy among the teachers and unidentified state officials appears to be based on the fact that the teachers' report of suspected child abuse served as the basis for certain legal actions taken against Barr. The district court did not err in finding that these allegations were insufficient to support a conspiracy claim. *See Twombly*, 550 U.S. at 555, 570, 127 S.Ct. at 1964-65, 1974. Accordingly, the district court did not err in dismissing the second amended complaint with prejudice.

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**