Deotha WOODBURN et al., Plaintiffs,

v.

STATE OF FLORIDA DEPARTMENT OF CHILDREN AND FAMILY SERVICES et al., Defendants.

Case No. 09–20981–CIV.

United States District Court, S.D. Florida.

April 17, 2012.

Howard M. Talenfeld, Stacie J. Schmerling, Colodny, Fass, Talenfeld, Karlinsky, & Abate, P.A., Ft. Lauderdale FL, for Plaintiff.

Monica Galindo Stinson, Charles M. Fahlbusch, Attorney General Office, Craig S. Hudson, Marshall Dennehey Warner Coleman Goggin, Fort Lauderdale, FL, Cynthia A. Everett, Cynthia A. Everett, P.A., John Cody German, Blake S. Sando, Cole Scott Kissane PA, Miami, FL, for Defendants.

### ORDER ON DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT

ROBERT N. SCOLA, JR., District Judge.

THIS MATTER is before the Court on the Motion to Dismiss the Third Amended Complaint (ECF No. 271) filed by Defendants Our Kids, Inc. ("Our Kids") and Frances Allegra ("Allegra")The Court has reviewed the Motion, the record, and the relevant legal authorities, and for reasons set forth more fully below, the Motion is **DENIED.**

### I. *FACTUAL BACKGROUND AND ALLEGATIONS*

#### a. *The Parties*

The facts and procedural background underlying this action are set forth extensively in the Court's previous order on the Defendants' motions to dismiss the Second Amended Complaint (ECF No. 255). The Court only summarizes the relevant allegations here.

Plaintiff Soung Lanaza ("Lanaza") is a minor, born in Florida in 1994 and currently residing in New York with her aunt and legal guardian, Deotha Woodburn ("Woodburn"). At all times material to this action, Woodburn resided in New York. According to the Third Amended Complaint, Lanaza was exposed to illegal substances in her mother's womb, which affected her fetal development. She now suffers from mental and physical disabilities. Shortly after her birth, Lanaza became a ward of the State of Florida, in the legal custody of the State of Florida Department of Children and Family Services ("DCF"). She allegedly lived in a shelter until 1995, when she was moved to a group home until 1999, at which point, pursuant to the Interstate Compact for the Protection of Children ("ICPC"), Lanaza moved to New York

City to live with Woodburn as her foster parent. Lanaza allegedly remained a ward of the State of Florida throughout this period, including her time in Woodburn's care. Our Kids is a private corporation under a contract with DCF to provide community-based foster care services in Miami–Dade County. Allegra is the executive director of Our Kids.

### b. Counts and Motion to Dismiss

In her eight-count Third Amended Complaint, Lanaza brings four counts against Our Kids and Allegra: (1) negligence against Our Kids (Count I); (2) a claim under Fla. Stat. § 393.13 against Our Kids (Count III); (3) a claim under 42 U.S.C. § 1983 against Our Kids and Allegra (Count VI); and a claim of "estoppel/restitution against Our Kids, among others (Count VIII)." In the present Motion, Our Kids and Allegra move to dismiss Counts VI (§ 1983) and VIII (estoppel/restitution) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Subsequent to the filing of the Motion, Lanaza voluntarily dismissed Count VIII as to Our Kids (ECF No. 278). Therefore, the Defendants' Motion to Dismiss Count VIII is moot, and the Court does not address it further in this Order.

### c. Factual Allegations Underlying Count VI

Lanaza realleges various factual allegations against both Our Kids and Allegra from her Second Amended Complaint. In summary, she reasserts that Our Kids became involved with her as part of the transition to community-based care in May of 2005, while Lanaza was living in New York. 3d. Am. Compl. 15 ¶ 61. Our Kids allegedly failed to provide Woodburn with Lanaza's medical documentation, including critical information regarding her specialized health needs. *Id.* at 14 ¶ 58. Lanaza also reasserts that the Defendants, including Our Kids and Allegra, failed to provide her with any support services while she lived with Woodburn, including failure to secure certain benefits (such as Medicaid waiver benefits, which allegedly would have provided financial support based on Lanaza's disabilities). *Id.* at 16 ¶¶ 66–69. Lanaza realleges that Our Kids failed to involve Woodburn in the case planning process regarding Lanaza in contravention of the intent and purpose of the process, thereby preventing Woodburn from achieving the understanding necessary to care for Lanaza. *Id.* at 17 ¶ 70.

Lanaza also adds several new allegations relevant to the present Motion. Regarding both Our Kids and Allegra, Lanaza alleges that these Defendants were "persons" acting under color of state law, performing a function traditionally within the exclusive prerogative of the state, and that children like Lanaza have the constitutionally-protected right to be safe and free from unreasonable risk of harm. *Id.* at 42 ¶¶ 108–112. Lanaza also alleges that Our Kids and Allegra were deliberately indifferent or acted with reckless disregard to her health, safety, welfare, and rights, including by failing to properly train or monitor case workers. *Id.* at 42 ¶ 112. She further states: (1) that Our Kids and Allegra established a systematic policy of accepting responsibility for the care of children from DCF despite knowing that the files of many children, including those of Lanaza, were incomplete and lacked critical documents and information; and (2) that Our Kids and Allegra made no independent assessment or took no further action to locate the information and complete the files, thereby threatening the safety and well-being of the children. Moreover, Our Kids and Allegra allegedly delegated all care responsibility to Defendant One Hope United, Inc. ("One Hope"), despite knowing that the files were incomplete, and without any direct supervision over or participation in

One Hope's caregiving practices, thereby ignoring the risk that necessary information would go unknown and children's needs would go unmet. *Id.* at 42–43 ¶ 113(a)-(e). Additionally, Lanaza alleges that Our Kids and Allegra established and enforced policies or practices which resulted in children like Lanaza staying in foster care in excess of the statutorily-prescribed maximum of one year, and longer than children in other Florida districts, thereby prioritizing the financial interests of Our Kids over the interests of the children. *Id.* at 44 ¶ 113(f)-(h).

Regarding only Our Kids, Lanaza alleges that it maintained policies that: (1) failed to ensure that children placed out of state under the ICPC were adequately assessed and provided with necessary medical services; (2) failed to ensure the adequate safety and nurturing of children placed out of state under the ICPC; (3) failed to ensure that children's social, mental, and physical needs were met under its care; (4) failed to provide a comprehensive health assessment for each child under its care; (5) failed to identify which children were eligible for disability services and ensure that such children received those services; (6) failed to adequately educate and train caregivers like Woodburn to meet the special needs of children like Lanaza; (7) failed to ensure that special needs children like Lanaza received adequate transportation services; (8) failed to provide a complete and adequate case plan for each child under its care, to regularly review that plan, and to develop that plan in collaboration with caregivers; (9) failed to ensure that children placed out of state under the ICPC were treated equally with children located within Florida; (10) failed to ensure that service providers completed reports regarding the services they provided to children under Our Kids' care; (11) failed to obtain benefits for eligible children, such as Medicaid certification and waivers, which would provide necessary

medical support; (12) failed to make efforts to reduce the length of stay of children in foster care pursuant to statewide goals; and (13) failed to effectively staff cases. Finally, Lanaza alleges that Our Kids knew that a disproportionate share of children in Florida's foster care system for the longest time—25 of the top 100—were within its care, and took no action to achieve permanency for these children despite knowing the risk of harm of continued foster care for them. *Id.* at 44–49 ¶¶ 113(i)-(bb).

Regarding only Allegra, Lanaza alleges her personal participation in these policies by: (1) being subjectively informed that Woodburn raised concerns of not receiving enough money to meet Lanaza's needs for five years, but taking no action to assess her funding situation, assess her prescribed level of care, or move to achieve adoption to take her out of foster care; (2) being subjectively aware of the systemic problems regarding the administration of psychotropic medications to foster children without a behavior treatment plan, and being subjectively aware through reports that Lanaza was one such child, but doing nothing to provide a behavior treatment plan for her; (3) being subjectively aware that 25 children in Our Kids' care were in the top 100 children of 20,000 in Florida who were in foster care the longest, and being aware of the risk presented by continued nonpermanency for those children, but doing nothing to address that nonpermanency; and (4) orchestrating and participating in the aforementioned policy of knowingly accepting incomplete files from DCF and transferring them to One Hope while knowing they lacked critical information. *Id.* at 49–50 ¶ 113(cc)(i)-(vii).

Lanaza alleges that Our Kids and Allegra took the above actions knowing that they would expose children like Lanaza to a substantial risk of serious harm, and that

they took no action to ensure the safety of children like Lanaza despite having the authority and means to do so, constituting deliberate indifference to the risk of harm. *Id.* 52–53 ¶ 120. As a result, Lanaza alleges that she and other children in her position suffered physical harm, developmental harm, psychological trauma, pain and suffering, and deterioration. *Id.* at 53 ¶ 121.

## II. *LEGAL STANDARDS*

### a. *Motions to Dismiss Generally*

The general pleading standard set forth in Rule 8(a), as interpreted by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) was set forth in detail in the Court's prior Order. *See* ECF No. 255. Put simply, In order to be "minimally sufficient," a complaint must put the defendant on notice of the claims against him. *Bailey v. Janssen Pharmaceutica, Inc.*, 288 Fed.Appx. 597, 603 (11th Cir.2008). Moreover, a complaint will not suffice if it tenders " 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 129 S.Ct. at 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also id.* at 1945 (well-pled complaint "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation" (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955)).

### b. *§ 1983; Private Entities as State Actors*

 As the Court stated in its previous order, for § 1983 purposes, Our Kids qualifies as a state actor. Where the "state actor" is a private entity contracting with a municipality, a complaint must allege that the violation of rights resulted from an "official policy or custom." *Whittier v. City of Sunrise*, 395 Fed.Appx. 648, 650 (11th Cir.2010); *see also German v. Broward Cnty. Sheriff's Office*, 315 Fed. Appx. 773, 776 (11th Cir.2009). A policy or custom "is established by showing a persistent and widespread practice and an entity's actual or constructive knowledge of such customs, though the custom need not receive formal approval." *German*, 315 Fed.Appx. at 776 (citing *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir.1986)). "[N]ormally random acts or isolated incidents are insufficient to establish a custom or policy." *Id.* at 776 (quoting *Depew*, 787 F.2d at 1499); *see also Barr v. Gee*, 437 Fed.Appx. 865, 873–74 (11th Cir.2011).

### c. *§ 1983: Supervisory Individuals*

 As discussed the previous order, supervisory individuals cannot be held liable under § 1983 for the unconstitutional acts of their subordinates on the basis of vicarious liability alone. *German v. Broward Cnty. Sheriff's Office*, 439 Fed.Appx. 867, 869–70 (11th Cir.2011) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999)). Instead, such an individual can only be held liable acts if she "personally participates" in the subordinate or organizational misconduct *or* where a "causal connection" exists between the individual's conduct and the alleged misconduct. *Am. Fed'n of Labor and Cong. of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1190 (11th Cir.2011) (citing *Braddy v. Fla. Dep't of Labor and Emp't Sec.*, 133 F.3d 797, 802 (11th Cir.1998)). A "causal connection" may be shown in one of three ways:

> by evidence of (1) "a custom or policy that results in deliberate indifference to constitutional rights," (2) "facts that support an inference that the supervisor[ ] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," or (3) "a history of widespread abuse" that notified the supervisor of the need to correct the alleged deprivation, but [s]he failed to do so.

*Campbell v. Johnson,* 586 F.3d 835, 840 (11th Cir.2009) (quoting *West v. Tillman,* 496 F.3d 1321, 1328–29 (11th Cir.2007)). For a history of abuse to be widespread enough to put the supervisor on notice, the abuse must be "obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." *Doe v. School Bd. of Broward Cnty., Fla.,* 604 F.3d 1248, 1266 (11th Cir.2010).

### III. ANALYSIS AND CONTROLLING AUTHORITY

#### a. Motion to Dismiss Count VI as to Our Kids

In the Motion, the Defendants argue that the Court should dismiss Count VI without prejudice because the claim fails to clearly distinguish which allegations in the claim are alleged against Our Kids as opposed to Allegra. Citing Rule 10 of the Federal Rules of Civil Procedure, they contend that Lanaza should be ordered, for clarity's sake, to separate the claims against Our Kids and the claims against Allegra into two separate counts.

■ Rule 10(b) does indeed require parties to limit claims "as far as practicable to a single set of circumstances," and further states that if practicable, "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." Fed.R.Civ.P. 10(b). This Rule generally sets forth a "one claim per count" standard. *Solar Star Sys. LLC v. Bellsouth Telecomms., Inc.,* No. I0–21105–CIV, 2011 WL 3648267, at *6 (S.D.Fla. Aug. 15, 2011) (Moreno, J.). The Court finds that Count VI of the Third Amended Complaint does not contravene this standard. The combined § 1983 claims against Our Kids and Allegra are based on the same alleged systems and policies of Our Kids, which Lanaza claims Allegra established or aided. Thus, both Defendants are alleged to have participated in these acts. It is therefore under-standable for Lanaza to group certain allegations against both defendants by the nature of the allegations. The Third Amended Complaint explains the relationship between Our Kids and Allegra, its executive director. Given this interrelationship between the two Defendants, the Court finds the fact that certain of Lanaza's allegations address both Defendants jointly both sensible and procedurally appropriate. *Cf. United States ex rel. Heater v. Holy Cross Hosp., Inc.,* 510 F.Supp.2d 1027, 1036 (S.D.Fla.2007) (Cohn, J.) (finding joint definition of hospital and managing agency as "defendants" not violative of pleading standard). This is not the type of situation the Court found to potentially violate Rule 10(b) in the Second Amended Complaint, where Lanaza attempted to bring two different claims within one count. *See* Order, ECF No. 255. Here, the allegations against both Defendants raise the same claims and relate to the same occurrences. They are properly pled in one count as to both parties under Rule 10(b). This interrelationship notwithstanding, the Court does not agree with the Defendants' proposition that they are unable to ascertain which allegations of Count VI pertain to solely Allegra, which pertain to solely Our Kids, and which pertain to both. The Court was able to do so, as set forth above. *See supra* Part I.c.

Accordingly, the Court finds that dismissal of Count VI as it pertains to Our Kids on the grounds stated by the Defendants is not warranted.

#### b. Motion to Dismiss Count VI as to Allegra

The Defendants also move to dismiss Lanaza's § 1983 claim against Allegra, arguing that the claim improperly attempts to assert a cause of action against Allegra on the sole basis of vicarious liability owing to her supervisory role as Our Kids's exec-

utive director. The Defendants contend that Lanaza only repeats the allegations found to be insufficient to state a claim against Allegra in the Court's prior order, and that as a result the Court should once again dismiss the § 1983 claim against Allegra.

The Defendants raise the same core arguments for dismissal of Lanaza's § 1983 claim against Allegra that they raised in their prior motion to dismiss. First, the Court found that while Lanaza had sufficiently alleged in the Second Amended Complaint that Our Kids maintained widespread policies or customs resulting in harm to her, she had not sufficiently alleged that such policies gave rise to a plausible inference of *deliberate indifference* to her rights, a higher standard than that required for organizational liability. *See Campbell,* 586 F.3d at 840.

Second, the Second Amended Complaint did not allege that Allegra directed anyone to act unlawfully. While it did allege that Allegra knew unlawful action would take place and failed to stop it through a lack of training, established case law within this Circuit requires a subjective knowledge of the need to train or supervise employees in a particular area. *See Barr v. Gee,* 437 Fed.Appx. 865, 875–76 (11th Cir.2011); *see also Am. Fed'n,* 637 F.3d at 1189. Absent an allegation that Allegra was on notice that specified training was needed, the allegations in the Second Amended Complaint were insufficient to support an inference that they knew unlawful conduct would result from a failure to train.

Third, the Court found that the Second Amended Complaint lacked allegations of an obvious, flagrant, rampant, continuing history of widespread abuse sufficient to put Allegra on notice of the alleged deprivation of Lanaza's rights. Thus, having failed to establish a causal connection between the supervisory individuals and the alleged misconduct by the organizations, the Second Amended Complaint failed to state a claim under § 1983 against Allegra.

■ Contrary to the Defendants' assertions, the Third Amended Complaint does not merely regurgitate the same allegations from the Second Amended Complaint; rather, as set forth above, Lanaza asserts a host of new allegations against both Defendants, including several allegations specifically referencing Allegra and alleging conduct on her part related to the alleged deprivation of Lanaza's rights. In its previous order, this Court emphasized the fact that Lanaza did not allege that Allegra personally participated in any act causing a deprivation of her constitutional rights, or that she personally made any decisions with regard to her. However, as set forth above, a supervisory official may be held liable for the unconstitutional acts of her subordinates where a causal connection exists or where she *personally participates* in the alleged misconduct. Here, unlike in the Second Amended Complaint, Lanaza does more than reference the alleged policies of Our Kids. The Third Amended Complaint expressly alleges that Allegra personally participated in violations of her constitutional rights. As Lanaza now alleges, Allegra: (1) was subjectively aware of Woodburn's concerns that she was not receiving enough funding to meet Lanaza's needs; (2) was subjectively aware of problems with administering psychotropic medications without a behavior treatment plan, and that Lanaza was on such medication without such a plan; and (3) was subjectively aware that Lanaza was one of the 25 of the top 100 children in Florida in foster care the longest, and subjectively aware of the urgent risk of harm presented by continued nonpermanency. In the face of this alleged subjective knowledge, Lanaza now claims that Allegra took no action, placing Lanaza at risk of substantial harm and in fact resulting in

such harm. These allegations are far more detailed and personal to Allegra than those of the Second Amended Complaint, which merely tagged Allegra onto the general allegations of unconstitutional policies maintained by Our Kids. Lanaza clearly alleges that Allegra had *personal knowledge* that Lanaza was not receiving adequate financial and programmatic support, was on allegedly dangerous medications without a plan, and was in an urgent state of nonpermanence. Whether the factual record will support these allegations will depend on the evidence. For now, the Court is satisfied that Lanaza has sufficiently stated a claim that Allegra personally participated in a violation of her constitutional rights in a manner that rises above mere *respondeat superior* liability. *See Danielle v. Adriazola*, 284 F. Sup.2d 1368, 1378–79 (S.D.Fla.2003) (Huck, J.) (holding on motion to dismiss that foster child sufficiently stated § 1983 claim against individuals even she alleged or inferred personal knowledge of child's condition and failure to act, stating "[t]he Court expresses no opinion on whether proof of these allegations will be forthcoming").[1]

In addition to these allegations of personal participation, the Third Amended Complaint also makes new allegations pertaining to Allegra's role regarding the policies or customs of Our Kids. The Third Amended Complaint alleges that Allegra orchestrated Our Kids' policy of knowingly accepting incomplete files from DCF and transferring them to One Hope with the knowledge that they lacked critical information. Unlike the policies alleged in the Second Amended Complaint, this alleged policy imputes *subjective knowledge* that

the case files lacked necessary information on the defendants. This added element— subjective knowledge of a risk of harm and a policy of continued misconduct in spite of that knowledge—makes Allegra's role regarding the policy different in character from the allegations set forth in the Second Amended Complaint, which the Court found did not rise to the level of deliberate indifference. The Court finds that, taken as true, a policy of knowingly accepting and delegating critically incomplete case files is a policy that results in deliberate indifference to the children's constitutional rights, sufficient to allege a causal connection between the alleged policy and a supervisory official. Therefore, Lanaza has not only sufficiently alleged Allegra's personal participation in unconstitutional misconduct by Our Kids (as set forth above), but she has also alleged that a specific policy of Our Kids existed that resulted in deliberate indifference to Lanaza's rights, sufficient to state a § 1983 claim against Allegra based on a causal connection to that policy.

"Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or where there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *German v. Broward Cnty. Sheriff's Office*, 439 Fed.Appx. 867, 870 (11th Cir.2011) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.1990)). This Court previously dismissed Lanaza's § 1983 claim against Allegra, specifically allowing her to re-plead the claim alleging either of these circumstances. Taking her well-pled factual

---

1. The Defendants rely on *Danielle* for the proposition that the Eleventh Circuit applies a heightened pleading standard to § 1983 claims. As the Court noted in its previous order, this is expressly no longer the case. *Milton v. Turner*, 445 Fed.Appx. 159, 161–62 (11th Cir.2011); *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir.2010) (finding heightened pleading rationale of cases cited by *Danielle* overturned by *Iqbal* ). Notably, even applying the old pleading standard for § 1983 actions, the court in *Danielle* found that the plaintiff had sufficiently alleged a cause of action against the individual defendants.

allegations as true, the Court finds that Lanaza has provided sufficient additional allegations against Allegra and Our Kids to plausibly infer both.

## IV. *CONCLUSION*

Based on the foregoing, it is **ORDERED and ADJUDGED** that the Defendants' Motion (ECF No. 271) is **DENIED.** Our Kids and Allegra shall file a responsive pleading to the Third Amended Complaint **within fourteen days of this Order.**