[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-12348

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 11, 2009
THOMAS K. KAHN
CLERK

D.C. Docket No. 06-81139-CV-DTKH

LINDA LEWIS, as mother and personal representative of the estate of her son, Donald George Lewis, deceased,

Plaintiff-Appellant,

versus

CITY OF WEST PALM BEACH, FLORIDA, RAYMOND SHAW, ROBERT LEROY ROOT, III, RANDALL MAALE, THELTON LUKE, AUDREY DUNN, Police Officers for the City of West Palm Beach Police Department, in their individual capacities,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 11, 2009)**

Before DUBINA and CARNES, Circuit Judges, and GOLDBERG,* Judge.

_____

* Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

GOLDBERG, Judge:

While in the custody of five police officers in West Palm Beach, Florida, Donald George Lewis became unconscious, and eventually died. Following the death of her son, Linda Lewis filed an action against the City of West Palm Beach and the individual police officers Raymond Shaw, Robert Leroy Root III, Randall Maale, Thelton Luke, and Audrey Dunn pursuant to 42 U.S.C. § 1983 and Florida state law. The district court granted summary judgment in favor of the City of West Palm Beach and the individual officers. Ms. Lewis appealed this order. For reasons discussed below, we affirm the decision of the district court.

**Background**

On October 19, 2005, Officer Raymond Shaw encountered Donald George Lewis near the intersection of 45th Street and Broadway in West Palm Beach, Florida. Lewis was disoriented, stumbling into the road, and trying to flag down passing vehicles. Officer Shaw attempted to stop Lewis, who was breathing heavily, grunting incoherently, and appeared to be under the influence of some type of narcotic. Shaw instructed Lewis to sit down on the side of the road. Lewis complied, but seconds later he stood and ran into traffic. Shaw struggled with Lewis and maneuvered him to the ground. He then attempted to handcuff Lewis's hands behind

2

his back.  Officer Robert Root appeared on the scene.  In an effort to assist Shaw in the handcuffing process, Officer Root placed his knee on Lewis's upper back and neck.  Officer Thelton Luke also arrived on the scene.  Officers Luke and Root then bound Lewis's legs using a leg restraint.  Throughout, Lewis continued groaning and breathing heavily and did not respond to Shaw's repeated requests to calm down.  The three officers carried Lewis to the side of the road.  They attempted to place him in a seated position, but Lewis would not sit up.  Officers Randall Maale and Audrey Dunn arrived.  Officer Maale suggested Root further restrain Lewis by attaching the ankle restraint to the handcuffs with a hobble cord[1] (also known as "TARP," the total appendage restraint position).  In an attempt to attach the hobble, Luke and Root kept their knees on Lewis's back, while Shaw picked up Lewis's bound legs and pushed them forward.  The hobble was tightened so that Lewis's hands and feet were close together behind his back in a "hogtied" position.[2]  After Lewis's hands and feet were bound together, Maale realized that Lewis had become unconscious.  The officers removed the hobble and restraints and began CPR.  Paramedics arrived within minutes, but were unable to resuscitate Lewis.  He was later pronounced dead.

The exact cause of death is unclear.  At the district court level, the defendants

---

[1] A hobble cord is a strap with a loop on one end and a metal hook at the other that is used to limit movement by connecting the ankle restraint to the handcuffs.

[2] Also referred to as fettering, the hogtie position is one where the hands and feet are strapped relatively closely together behind the back, rendering the subject immobile.

relied on the testimony of Dr. Michael Bell, the county medical examiner who performed the autopsy of Lewis. Dr. Bell concluded that the cause of death was "sudden respiratory arrest following physical struggling restraint due to cocaine-induced excited delirium." Ms. Lewis offered the expert testimony of Dr. Michael Baden, who testified that the cause of death was asphyxia caused by neck compression.[3]

## Standard of Review

A district court's grant of summary judgment is reviewed *de novo*. *Kingsland v. City of Miami*, 382 F.3d 1220, 1225 (11th Cir. 2004). In evaluating the claims, the evidence and factual inferences are viewed in a light most favorable to the nonmoving party. *Id.* at 1226.

## Discussion

I.  <u>Qualified Immunity for the Police Officers</u>

---

[3]The entire incident was captured on videotape, which was submitted as evidence to the district court, and is part of the record on appeal. We have followed the Supreme Court's example and reviewed *de novo* the videotape evidence that was presented to the district court at the summary judgment stage. *See Scott v. Harris*, 550 U.S. 372, ___, 127 S. Ct. 1769, 1776 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have reviewed the facts in the light depicted by the videotape.").

Appellant claims that Officers Shaw, Root, and Luke in restraining Lewis used excessive force in violation of the Fourth Amendment. Appellant argues that Officers Maale and Dunn had a duty to intervene when witnessing the use of excessive force, and they failed to do so. She asserts that pursuant to 42 U.S.C. § 1983 the officers are liable for constitutional violations in their individual capacities. The officers dispute these assertions and claim exemption from civil liability under the doctrine of qualified immunity.

Qualified immunity protects municipal officers from liability in § 1983 actions as long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To receive qualified immunity, the officer must first show that he acted within his discretionary authority. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). It is undisputed in this case that the officers were acting within their discretionary authority.

Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply. *Id.* In analyzing the applicability of qualified immunity, the Court has at its disposal a two-step process. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Traditionally, a court first determines whether the officer's conduct amounted to a constitutional violation.

5

*Id.* Second, the court analyzes whether the right violated was "clearly established" at the time of the violation. *Id.* The intention is to "ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Id.* at 206. Thus, if the violated right was not clearly established, qualified immunity still applies. *Id.* at 201. The Supreme Court recently clarified the *Saucier* two-step process explaining that the order of the inquiry is fluid, providing the Court with the flexibility to focus on the determinative question. *Pearson v. Callahan*, U.S. 2009, 555 U.S. ___ (No. 07-751, Jan. 21, 2009). The Supreme Court recognized that discussion of a constitutional violation may become unnecessary for qualified immunity purposes when the right was not clearly established. *Id.* It is therefore not mandated that the Court examine the potential constitutional violation under *Saucier* step one prior to analyzing whether the right was clearly established under step two. *Id.*

Such analytical flexibility is certainly applicable here. Even if the officers' actions violated Lewis's Fourth Amendment rights, the appellant did not demonstrate that the officers' conduct was an intrusion on a clearly established right. A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right, *Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007); (2) a

6

broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right, *id.*; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).

Here, case law does not provide the necessary precedent, either specifically or through broad principles, to clearly establish the right. Thus, only if the officers' conduct was so egregious and unacceptable so as to have blatantly violated the Constitution would qualified immunity be unavailable to them. However, to come within this narrow exclusion, "plaintiff must show that the official's conduct was so far beyond the hazy border between excessive and acceptable force that the official had to know he was violating the Constitution even without case law on point." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997). This standard is met when every reasonable officer would conclude that the excessive force used was plainly unlawful. *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926-27 (11th Cir. 2000). Appellant argues that because the officers further restrained Lewis with the hobble after the need for any use of force had passed and tightened it to form a hogtie, the officers' conduct rose to this level of egregiousness. This is not the case. Even though most of the officers in this case testified that Lewis was not a danger to them and was merely resisting arrest,

he was, as the district court described, "an agitated and uncooperative man with only a tenuous grasp on reality." Because of his refusal to sit upright and his inability to remain calm, Lewis remained a safety risk to himself and to others.

As the district court observed, this was precisely the type of situation where the decisions of the officers confronted with "circumstances that are tense, uncertain, and rapidly evolving" should not be second-guessed. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). Unlike many of the cases cited by plaintiff, Lewis did not remain compliantly restrained. *Cf. Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002) (qualified immunity denied to officer who was physically rough with arrestee despite any sort of threat or physical aggression on her part); *Priester v. City of Riviera Beach*, 208 F.3d 919 (11th Cir. 2000) (qualified immunity denied to officer who ordered a dog attack on a passive suspect); *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997) (qualified immunity denied on summary judgment to officer who broke arrestee's arm after he was passively under arrest). Even though he was not forcefully attacking the officers, Lewis continued to struggle. The application of the hobble may not have been entirely necessary; however, the officers' attempts to restrain Lewis were not so violent and harsh to be considered an egregious violation of a constitutional right, and they are not an obstacle to the

8

application of qualified immunity. Despite the unfortunate result that night, qualified immunity insulates the officers from liability for Lewis's death.

II.      Municipal Liability for the City of West Palm Beach

In addition to the liability pegged on the police officers, Appellant also claims that the City of West Palm Beach is responsible for Lewis's death pursuant to 42 U.S.C. § 1983 because of a failure to provide adequate training to its police officers on the use and application of hobbles. Appellant contends that the pressure applied to Lewis's upper back and neck by Officer Luke and then Officer Shaw, along with the use of the hobble as a hogtie caused Lewis's sudden death, and that these actions can be attributed to City policy.

A city may only be held liable under 42 U.S.C. § 1983 when the injury caused was a result of municipal policy or custom. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Municipal policy or custom may include a failure to provide adequate training if the deficiency "evidences a deliberate indifference to the rights of its inhabitants." *Id.* at 388. To establish a city's deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346,

9

1350 (11th Cir. 1998). A city may be put on notice in two ways. First, if the city is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training, it is considered to be deliberately indifferent. *Id.* at 1351. Alternatively, deliberate indifference may be proven without evidence of prior incidents, if the likelihood for constitutional violation is so high that the need for training would be obvious. *Id.* at 1351-52.

Appellant's argument rests on the latter premise. Appellant claims that the need for training on the proper use of hobble restraints and the proper placement of weight on an arrestee's back during the restraint process is "so obvious" that it requires proactive training by the City to ensure avoidance of constitutional violations. In establishing this form of notice, the Supreme Court referenced the proper use of firearms and the correct use of deadly force as an area that would be so obvious as to require adequate training by the municipality to avoid liability. *City of Canton*, 489 U.S. at 390 n. 10. In comparison, this Court refused to acknowledge the proper response to handcuff complaints as so obvious as to put the municipality on notice that training is required. *Gold*, 151 F.3d at 1352. Similarly, the application of a hobble does not rise to the level of obviousness reserved for "a narrow range of circumstances [where] a violation of federal rights may be a highly predictable consequence" of a failure to provide adequate

10

training. *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 409 (1997). Despite the questionable use of the hobble in this particular situation, hobbles do not have the same potential flagrant risk of constitutional violations as the use of deadly firearms. Failure to provide training on hobbles is not a "particular glaring omission in a training regimen." *Id.* at 410. Notably, in both the case at bar and as previously decided in *Garrett v. Athens-Clarke County*, 378 F.3d 1274, 1280 (11th Cir. 2004), hogtying or "fettering" under the given circumstances does not violate the Fourth Amendment. The City is therefore unlikely to be on notice of its potential legal ramifications in this context. Thus, the hobble, and the understanding of its proper application, does not carry a high probability for constitutional violations in the manner intended by the "so obvious" notice that would open the door to municipal liability.

Additionally, the City of West Palm Beach does provide training on the use of the hobble. In resolving the issue of the City's liability, "the focus must be on the adequacy of the training programs in relation to the tasks the particular officers must perform," and not merely on the training deficiencies for a particular officer. Canton, 489 U.S. at 390. It is thus irrelevant what training each specific officer present at the scene was given or retained. Training Officer Gerald MacCauley testified that the City of West Palm Beach provides regular training on the use of

11

force, and additionally provides specific training on the use of hobbles. The officers are also told that the proper placement of pressure or weight placed on an individual while restraining them should be on the back, near the shoulder blades, and not on the neck area. Officer MacCauley further emphasized that it is department policy not to hogtie arrestees; however it is acceptable to bring the ankles near the wrists briefly, if necessary, while attaching the hobble. While not under a specific constitutional duty under § 1983, the City takes actions to ensure that arrestees are not subjected to unnecessary or painful procedures when restrained.

Because the City of West Palm Beach did not maintain a deliberate indifference to a potentially obvious constitutional violation and because the City provides some training on the use of hobbles, the City cannot be held liable under 42 U.S.C. § 1983.

III.    Wrongful Death Claim Against the City

The district court found that Appellant failed to state a claim of wrongful death because she alleged that the officers' use of force was negligent, and there is no cause of action for the negligent use of force. The district court is correct on this count; it is inapposite to allege the negligent commission of an intentional

12

tort, such as the use of excessive force. *See City of Miami v. Ross*, 695 So.2d 486, 487 (Fla. 3d DCA 1997); *City of Miami v. Sanders*, 672 So.2d 46, 48 (Fla. 3d DCA 1996).  This claim fails.

## Conclusion

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of the individual police officers named in this case, and the City of West Palm Beach.

AFFIRMED.