[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15349
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 22, 2012
JOHN LEY
CLERK

D.C. Docket No. 3:08-cv-00063-WS-CJK


DANIEL R. THOMPSON,
CATHY A. THOMPSON,

                                                    Plaintiffs - Appellees,

                              versus

WENDELL HALL,
in his official capacity as
sheriff of Santa Rosa County,
Florida, et al.,

                                                                  Defendants,


AARON A. JASPER,
JOHN YOUNGHANSE,
JERRY D. UTSEY,
in their individual capacities,

                                                    Defendants - Appellants.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(June 22, 2012)

Before BARKETT, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Defendants Jerry Utsey and Aaron Jasper, both Sheriff's deputies in Santa

Rosa County, Florida, appeal the denial of their motions for summary judgment on

the basis of qualified immunity. After careful review, we affirm.

The district court's order set forth the facts of this case, so we will not

restate them here. Instead, we will refer to specific facts as necessary for our

analysis. We review de novo a district court's denial of summary judgment based

on qualified immunity, viewing the facts in the light most favorable to the non-

movant. See Draper v. Reynolds, 369 F.3d 1270, 1274 (11th Cir. 2004).

We analyze these claims under the familiar two-step qualified immunity

analysis. See Edwards v. Shanley, 666 F.3d 1289, 1294 (11th Cir. 2012); see also

Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). The first step is

to determine whether the defendant's conduct "amounted to a constitutional

violation. Lewis v. City of West Palm Beach, 561 F.3d 1288, 1291 (11th Cir.

2009).  The second step is to determine "whether the right violated was clearly established at the time of the violation."  Id. (quotation marks omitted).

First, Utsey and Jasper argue that, in light of the circumstances that evening, Deputy Utsey's handcuffing and detention of Cathy Thompson were not unreasonable under clearly established law.  Essentially, they argue that because "[t]here is no bright line guidance as to how long a pre-arrest investigation detention can occur," and because the facts of this case are quite particular, it was not clearly established that Deputy Utsey's actions were unreasonable.  As a result, they contend, qualified immunity should have been granted.

We analyze claims that an officer acted unreasonably during an investigatory detention under the Fourth Amendment.  See Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002).  To do this, we ask "whether the officer's conduct is objectively reasonable in light of the facts confronting the officer," Edwards, 666 F.3d at 1295 (quotation marks omitted).

Under the first step in the Saucier analysis, we must decide whether Deputy Utsey's conduct amounted to a Fourth Amendment violation.  See Lewis, 561 F.3d at 1291.  Our inquiry turns on whether the manner and length of an investigatory detention "was reasonably related in scope to the circumstances which justified the interference in the first place."  United States v. Gil, 204 F.3d 1347, 1351 (11th

3

Cir. 2000) (quotation marks omitted). In answering this question, we consider "four non-exclusive factors," namely: (1) the purpose of the detention; (2) the diligence of the police in conducting the investigation; (3) the scope and intrusiveness of the detention; and (4) the duration of the detention. United States v. Acosta, 363 F.3d 1141, 1146 (11th Cir. 2004).

Applying these factors to the facts as construed at the summary judgment stage, we hold that a reasonable jury could find that the handcuffing and investigatory detention of Cathy Thompson lasted far longer than was reasonably necessary. We recognize that on these facts, it was not unreasonable for Deputy Utsey to make the split-second determination that, if his fellow officer had observed some action that led him to bring down Cathy Thompson, it was at that moment necessary to handcuff her as well. See Gil, 204 F.3d at 1351 ("It was necessary for the agents to detain Ms. Gil to prevent her from jeopardizing their investigation."). But the length and circumstances of Cathy Thompson's detention were not "reasonably related in scope to the circumstances which justified" the initial decision to handcuff her. Id. Cathy Thompson remained handcuffed for at least an hour, well after the scene had been secured. This, even though the facts suggest that, within ten minutes of being handcuffed, Thompson was calm enough that Utsey felt it was "a little extreme" for her to be kept on the ground. This is

4

particularly true in light of the fact that there was never any suspicion that she herself had been involved in the underlying crime. Further, a female officer stood with Thompson, and was available to pat down Thompson if there had been any concern that Thompson herself might have possessed a weapon. So it should have quickly become clear that it was unnecessary to use the more intrusive method of handcuffing Thompson as the investigation was conducted.

Beyond that, these facts suggest that the purpose of the detention changed when the officers, including Utsey, began cajoling some witnesses to alter their statements in an untruthful way. It goes without saying that continuing to detain an individual, in handcuffs, while encouraging witnesses to falsify their statements renders the detention unreasonable.[1] We therefore find Deputy Utsey's conduct, as it is alleged, to be unconstitutional.

Having reached this conclusion, we turn to the second step of the Saucier analysis, inquiring whether it was clearly established at the time Deputy Utsey

---

[1] If the reasonableness line is drawn by weighing the "limited violation of individual privacy involved against the opposing interests in crime prevention and detection and in the police officer's safety," and none of those "opposing interests" are being served, Acosta, 363 F.3d at 1146 (quotation marks omitted), then that detention necessarily lacks any reasonable relation "in scope to the circumstances which justified the interference in the first place," United States v. Sharpe, 470 U.S. 675, 682, 105 S. Ct. 1568, 1573 (1985) (quoting Terry v. Ohio, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879 (1968)). See Delaware v. Prouse, 440 U.S. 648, 654, 99 S. Ct. 1391, 1396 (1979) ("[T]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." (emphasis added)).

5

detained and handcuffed Thompson that such a detention violated the Fourth Amendment. Lewis, 561 F.3d at 1291. Given that the cases on which we relied in finding the constitutional violation were decided prior to the events in this case, and that those cases leave no doubt as to the unconstitutionality of Deputy Utsey's actions as alleged, we conclude that it was. See Sharpe, 470 U.S. at 682, 105 S. Ct. at 1573; Prouse, 440 U.S. at 654, 99 S. Ct. at 1396; see also Acosta, 363 F.3d at 1146; Gil, 204 F.3d at 1351 (holding that an investigatory detention was reasonable where an individual "was detained for only as long as it was necessary" for the police to complete their investigation).

Next, Deputies Utsey and Jasper argue that the district court erred by denying Jasper qualified immunity against the claim that he arrested Daniel Thompson without probable cause. Although Daniel Thompson was arrested and charged with aggravated assault on a law enforcement officer, Jasper now argues that he had at least arguable probable cause to arrest Daniel Thompson for either of two misdemeanor offenses: (1) discharging a firearm in violation of Fla. Stat. § 790.15(1); or (2) brandishing a firearm in violation of Fla. Stat. § 790.10.[2]

_____

[2] Section 790.15(1) provides that "any person who knowingly discharges a firearm in any public place . . . commits a misdemeanor of the first degree." Fla. Stat. § 790.15(1). Section 790.10 provides that "[i]f any person having or carrying any . . . firearm . . . shall, in the presence of one or more persons, exhibit the same in a rude, careless, angry, or threatening manner, not in necessary self-defense, the person so offending shall be guilty of a misdemeanor of the first degree." Id. § 790.10.

In order to receive qualified immunity against this claim, Jasper must have possessed arguable probable cause to arrest Daniel Thompson. See Grider v. City of Auburn, 618 F.3d 1240, 1257 (11th Cir. 2010). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." Id. (quotation marks omitted). If the officer had arguable probable cause to arrest for any offense, qualified immunity applies. Id.

Applying this standard to the facts as construed at the summary judgment stage, we conclude that a reasonable jury could find that Jasper did not possess arguable probable cause to arrest Thompson. The record contains evidence that looters were feared to be active in the neighborhood, only one shot was fired, and that Thompson's neighbor acknowledged at the scene that he was the one who fired that shot to frighten away looters. Further, the record contains evidence that Thompson carried the firearm because of his fear that it would be necessary to defend against looters, and that he kept the firearm down by his side without displaying it. The record also contains evidence that Thompson immediately surrendered the firearm when confronted by the officers. On these facts, a jury could find that no reasonable officer in the same circumstances and possessing the same knowledge as Jasper could have believed that probable cause existed to

arrest Thompson for either of the offenses Jasper suggests.

Last, Deputies Jasper and Utsey argue that the district court "impermissibly considered non-record inadmissable evidence" in reaching its conclusions. Specifically, they point to the district court's reference to facts derived from a criminal trial stemming from the same events at issue here. But the district court's comments concerning these facts were all contained only in the "Background" portion of the court's order; none was mentioned in the court's analysis of the two issues being appealed. Further, most of these facts were independently supported by other record evidence. Thus, even assuming that Jasper and Utsey were correct that the district court erred in considering this evidence, we conclude that any error was harmless. Cf. Mason v. Balcom, 531 F.2d 717, 719 n.1 (5th Cir. 1976) (determining that "the District Court's admission of testimony in order 'not to hear the case in a vacuum' and its comments on judicial notice . . . , if error, had only a negligible effect on the outcome of the case and were harmless").[3]

For these reasons, we affirm the district court's denial of qualified immunity with respect to these two claims.

**AFFIRMED.**

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), we adopted as binding all Fifth Circuit precedent from prior to October 1, 1981.