[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15418
Non-Argument Calendar

_____

D.C. Docket No. 6:10-cv-00342-MSS-DAB

ANA MARIA HAZLETON,

Plaintiff-Appellee,

versus

FERNANDO TRINIDAD,
individually and in his official capacity,
FRANK SIKOS,
individually and in his official capacity,
EDWARD ALBINO,
individually and in his official capacity,

Defendant-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 26, 2012)

Before MARTIN, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

Defendants Fernando Trinidad, Frank Sikos, and Edward Albino (together, "the officers"), officers for the Orlando Police Department, appeal the denial of their motions for summary judgment on the basis of qualified immunity. After careful review, we affirm.

On December 28, 2009, Ana Marie Hazleton brought suit in state court under 42 U.S.C § 1983, alleging that the officers committed various civil rights violations and common law torts while arresting her in her home without first securing a warrant.[1] After the case was removed to federal court, the officers moved for summary judgment on the basis of qualified immunity.

The district court granted the officers' motions in part and denied them in part. While the district court concluded that the officers were entitled to qualified immunity for Hazleton's claims related to the officers' entry into her garage, the court also decided that the officers were not entitled to qualified immunity as to Hazleton's claims of unlawful arrest and seizure. According to the district court, the evidence as construed at summary judgment established that the officers had probable cause to arrest Hazleton for the misdemeanor offense of resisting an officer without violence, see Fla. Stat. § 843.02, but did not establish that there

---

[1] The district court's order summarized the evidence in the summary judgment record, so we will not recite that evidence here. Instead, we will refer to specific facts as necessary for our analysis.

were exigent circumstances that would justify the warrantless entry into Hazleton's home.  Following from the determination that Hazleton's arrest was unlawful, the district court also concluded that the force used by the officers in effectuating that arrest was excessive.

On appeal, the officers argue that the district court erred in denying qualified immunity, both because exigent circumstances existed to justify their pursuit of Hazleton into her residence and because the force used by the officers in arresting Hazleton was "minimal and reasonable," not excessive.

We review de novo a district court's denial of summary judgment based on qualified immunity, viewing the facts in the light most favorable to the non-movant.  See Draper v. Reynolds, 369 F.3d 1270, 1274 (11th Cir. 2004).

We analyze these claims under the familiar two-step qualified immunity analysis that, though not required for all cases, is nevertheless "often appropriate." See Edwards v. Shanley, 666 F.3d 1289, 1294 (11th Cir. 2012) (quotation marks omitted).  The first step is to determine whether the defendant's conduct "amounted to a constitutional violation."  Lewis v. City of West Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009).  If so, the second step is to determine "whether the right violated was clearly established at the time of the violation."  Id. (quotation marks omitted); see also Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct.

3

2508, 2515 (2002) ("For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." (quotation marks omitted)).

First, the officers argue that there was no clearly established Fourth Amendment violation because exigent circumstances existed to justify their pursuit of Hazleton into her residence. They argue that this requires summary judgment in their favor on her unlawful seizure and arrest claims. The officers point out that Florida law permits the hot pursuit of a fleeing misdemeanant, where the misdemeanor is punishable by a jail sentence, as is the case with Fla. Stat. § 843.02 here. See Ulysse v. State, 899 So. 2d 1233, 1234 (Fla. 3d DCA 2005); Gasset v. State, 490 So. 2d 97, 98 (Fla. 3d DCA 1986).

The officers are correct that Florida law permits the hot pursuit of a person suspected of violating Fla. Stat. § 843.02 under certain circumstances. However, their argument does not go far in addressing the question before us: whether there was indeed a hot pursuit in this case. That inquiry is governed by the "decisions of the U. S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state." See Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1032 n.10 (11th Cir. 2001) (en banc). We therefore look to that body of law in deciding whether the officers' conduct conformed with Federal

4

Constitutional requirements.

The controlling case law establishes that warrantless entry into a suspect's home is "presumptively unreasonable," absent consent or exigent circumstances. McClish v. Nugent, 483 F.3d 1231, 1248 (11th Cir. 2007). Exigent circumstances exist "when the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." United States v. Ramos, 933 F.2d 968, 972 (11th Cir. 1991) (per curiam) (quotation marks omitted). The "'hot pursuit' of a fleeing suspect" is among the recognized situations in which exigent circumstances may exist. United States v. Blasco, 702 F.2d 1315, 1325 (11th Cir. 1983) (quotation marks omitted).[2]

However, the hot pursuit doctrine does not excuse every instance where officers enter a home to arrest a suspect. "[H]ot pursuit means some sort of chase." United States v. Santana, 427 U.S. 38, 42–43, 96 S. Ct. 2406, 2410 (1976) (quotation marks omitted). The Supreme Court clarified this common-sense limitation to the hot pursuit doctrine in Welsh v. Wisconsin, 466 U.S. 740, 104 S. Ct. 2091 (1984), a case involving a warrantless home entry by officers to arrest a

---

[2] The officers do not argue that other factors contributing to exigent circumstances, such as "danger of flight or escape; danger of harm to police officers or the general public; [or] risk of loss, destruction, removal, or concealment of evidence," were present when they arrested Hazleton. United States v. Santa, 236 F.3d 662, 669 (11th Cir. 2000) (quotation marks omitted).

suspect for driving while intoxicated.  Id. at 743, 104 S. Ct. at 2094.

The facts of Welsh help illustrate its holding.  "[A]fter changing speeds and veering from side to side, the [suspect's] car eventually swerved off the road and came to a stop in an open field."  Id. at 742, 104 S. Ct. at 2093.  The suspect declined the assistance of a passer-by and walked away from the scene.  Id. at 742, 104 S. Ct. at 2094.  The passer-by contacted the police.  The officers soon arrived, interviewed the passer-by, and checked the registration of the now-abandoned car.  Id.  Realizing that the car's owner lived within walking distance, the officers went to the suspect's home, entered the house, and arrested the suspected driver.  Id. at 742–43, 104 S. Ct. at 2094.

The Supreme Court concluded that those circumstances were insufficient to justify entry into the suspect's home.  Id. at 754, 104 S. Ct. at 2100.  In rejecting the State's attempt to rely on the hot pursuit doctrine, the Court held that "the claim of hot pursuit is unconvincing [where] there was no immediate or continuous pursuit of the [suspect] from the scene of a crime."  Id. at 753, 104 S. Ct. at 2100.

Applying this principle to our facts as construed at summary judgment is relatively straightforward.  The record evidence shows that the officers paused their pursuit and directed their attention elsewhere for several minutes after

6

Hazleton ran into her home. Officer Trinidad removed Hazleton's son from the garage, then radioed for back-up. He then briefed Officer Sikos, who had just arrived on the scene. Next, the officers sent a neighbor into the house to try and convince Hazleton to come outside. Only after that effort failed did the officers approach the doorstep to the interior of the home and themselves confront Hazleton, who was just inside the door and speaking on the telephone. When Hazleton again refused to come outside, the officers entered her home and arrested her. Viewing this evidence in the light most favorable to Hazleton, we conclude that "there was no immediate or continuous pursuit" of Hazleton. Welsh, 466 U.S. at 753, 104 S. Ct. at 2099.

The officers also argue that they are entitled immunity in light of United States v. Santana, 427 U.S. 38, 96 S. Ct. 2406 (1976). They argue that Santana stands for the proposition that "a suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." Id. at 43, 96 S. Ct. at 2410. But Santana does not stand for the idea that, any time officers first identify a suspect in a public place, they thereafter have license to enter the suspect's home. Instead, Santana relies on there having been "some sort of a chase." Id. at 42–43, 96 S. Ct. at 2410. And the case's holding is simply that "[t]he fact that the pursuit . . . ended almost as soon as it began did not render it

7

any less a 'hot pursuit' sufficient to justify the warrantless entry . . . ." Id. Decided eight years after Santana, Welsh can best be viewed as clarifying that "some sort of chase," id. at 42–43, 96 S. Ct. at 2410, entails the "immediate or continuous pursuit" of a suspect. Welsh, 466 U.S. at 753, 104 S. Ct. at 2099.

Having concluded that such an "immediate or continuous pursuit" was not present here, id., we hold that the officers were not in hot pursuit of Hazleton when they entered her home without a warrant to arrest her for a misdemeanor offense. Accepting the facts as Hazleton has alleged them, therefore, she has established that the officers' conduct amounted to a constitutional violation.

Having reached this conclusion, we must next decide whether the constitutional violation was clearly established at the time of Hazleton's arrest in May 2007. Said another way, we must inquire whether, at that time, entry into a suspected misdemeanant's home to effect her warrantless arrest, when the officers first pause their pursuit for several minutes, was clearly established as falling outside the hot pursuit exception to the warrant requirement. Though "our circuit uses two methods to determine whether a reasonable officer would know that his conduct is unconstitutional," Edwards, 666 F.3d at 1296 (quotation marks and alterations omitted), we need only use the first method here. That method requires us to determine whether, at the time of the violation, the relevant case law applied

8

the legal principle to "a concrete factual context" such that it would have been obvious to a reasonable government actor in each of the officers' positions that his actions violated federal law. Hadley v. Guitierrez, 526 F.3d 1324, 1333 (11th Cir. 2008).

Welsh provides this "concrete factual context." Id. In Welsh, the Supreme Court unequivocally rejected the contention that the arresting officers were in hot pursuit of the suspect, where the officers arrived at the scene after the suspect had left and then proceeded to arrest him at his home. Welsh, 466 U.S. at 753, 104 S. Ct. at 2099. That holding placed the officers on notice that the hot pursuit doctrine requires an "immediate or continuous pursuit of [a suspect] from the scene of a crime." Welsh, 466 U.S. at 753, 104 S. Ct. at 2099.[3] As a result, it would have been obvious to a reasonable government actor in the officers' positions that, in the absence of an "immediate or continuous pursuit," id., no hot pursuit existed to justify the warrantless arrest of Hazleton in her home. See Hadley, 526 F.3d at 1333.

For these reasons, the district court was correct in concluding that, on the

---

[3] The Supreme Court has since relied on that holding to distinguish Welsh from situations in which exigent circumstances were found to exist. See Brigham City, UT v. Stuart, 547 U.S. 398, 406, 126 S. Ct. 1943, 1949 (2006) (noting that, in Welsh, "the 'only potential emergency' confronting the officers was the need to preserve evidence (i.e., the suspect's blood alcohol level)").

facts as construed at summary judgment, the exigent circumstances exception did not apply, precluding summary judgment on Hazleton's unlawful seizure and arrest claims.

Second, the officers argue that the district court erred in denying summary judgment in their favor with respect to Hazleton's excessive force claim. They contend that they "used only that force necessary (minor physical force, the application of pepper spray and the applications [sic] of handcuffs) . . . to take Ms. Hazleton into custody."

The district court correctly observed that, "if an arresting officer does not have the right to make an arrest, he does not have the right to use any degree of force in making that arrest." Bashir v. Rockdale County, 445 F.3d 1323, 1332 (11th Cir. 2006); see also Zivojinovich v. Barner, 525 F.3d 1059, 1071 (11th Cir. 2008) (stating that "even de minimis force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect"). The officers acknowledge using "minor physical force" and pepper spray in arresting Ms. Hazleton. There is, thus, no doubt that the officers deployed at least "de minimis force" in effectuating a warrantless arrest that we have already said is, for our purposes here, unlawful. Zivojinovich, 525 F.3d at 1071. As a result, we conclude that the district court did not err in denying summary judgment on this

10

issue.

Having concluded that the district court did not err in its treatment of the exigent circumstances and excessive force issues, we affirm its denial of qualified immunity, and therefore of summary judgment to the officers.

**AFFIRMED.**

11