[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-14070

Non-Argument Calendar

_____

ERIC WATKINS,

                                        Plaintiff-Appellant,

*versus*

OFFICER DAVID SESSION,
402,
WILLIAM VOGT,
Officer, Lauderhill Police Department,
DAVLIN SESSION,
Officer, Lauderhill Police Department,
CHIEF OF POLICE, LAUDERHILL POLICE DEPARTMENT,
CITY OF LAUDERHILL,

Defendants-Appellees,

LAUDERHILL POLICE DEPARTMENT,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:19-cv-60810-RKA

_____

Before BRASHER, ABUDU, and MARCUS, Circuit Judges.

PER CURIAM:

Eric Watkins appeals the district court's order dismissing with prejudice his third amended 42 U.S.C. § 1983 complaint against his arresting officers William Vogt and Davlin Session, Chief of Police Constance Stanley, and the City of Lauderhill, Florida, alleging that his Fourth and Fourteenth Amendment rights were violated when he was arrested for exposure of his sexual organs without probable cause. On appeal, Watkins argues that: (1) the district court erred in dismissing his claims against his arresting officers and the chief of police in their individual capacities because they did not have arguable probable cause to arrest him and were not entitled to qualified immunity; and (2) the court abused its

discretion by dismissing his final-policymaker claim against the city and chief of police in her official capacity because he complied with its prior order instructing him not to file any new claims in his third amended complaint. After thorough review, we affirm.

## I.

We review *de novo* the district court's decision to grant qualified immunity on a motion to dismiss, accepting the factual allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the plaintiff pleaded sufficient factual content to allow a court to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* "[A]n amended complaint supersedes the initial complaint and becomes the operative pleading in the case." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007).

We review a district court's order dismissing an action for failure to comply with the rules of the court for abuse of discretion. *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006). "Discretion means the district court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Id.* (quotations omitted). Even so, a dismissal with prejudice for failure to comply with court rules is an extreme remedy that is only proper when the district court

finds "a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct." *Id.* (quotations omitted).

## II.

First, we are unpersuaded by Watkins's claim that the district court erred in dismissing Counts One through Five, the Fourth and Fourteenth Amendment claims against his arresting officers and the chief of police in their individual capacities. To state a claim under § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the U.S. Constitution or federal law, and (2) the deprivation occurred under color of state law. *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). Qualified immunity protects public officials from undue interference with their duties and from potentially disabling threats of liability where they are not "on notice their conduct is unlawful." *See Garcia v. Casey*, 75 F.4th 1176, 1185, 1186 (11th Cir. 2023) (quotations omitted).

To establish qualified immunity, a defendant must first show that he was acting within the scope of his discretionary authority when the misconduct was alleged to have occurred. *Id.* at 1185. Once the defendant has established that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *Id.* An arresting officer is entitled to qualified immunity unless the plaintiff shows that (1) he violated a federal statutory or constitutional right, and (2) the unlawfulness of his conduct was clearly established at that time. *Id.* A plaintiff can demonstrate that a right is clearly established in one

of three ways, namely by pointing to (1) "case law with indistinguishable facts," (2) "a broad statement of principle within the Constitution, statute, or case law," or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291–92 (11th Cir. 2009).

A defendant cannot be said to have violated a clearly established right "unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014). Put differently, existing precedent must have placed "beyond debate" whether the officer violated that clearly established right. *Id.* at 779 (quotations omitted). Thus, the Supreme Court has "stressed the need to identify a case where an officer acting under similar circumstances was held to have violated" the Constitution. *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) (quotations and ellipsis omitted). Courts should not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, 572 U.S. at 779 (quotations and citation omitted).

An arrest not supported by probable cause violates the Fourth Amendment. *See Garcia*, 75 F.4th at 1186. Further, "the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen . . . if such false statements

6                    Opinion of the Court                    22-14070

were necessary to the probable cause." *Jones v. Cannon*, 174 F.3d 1271, 1285 (11th Cir. 1999). However, "the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Gates v. Khokar*, 884 F.3d 1290, 1297 (11th Cir. 2018) (quotations omitted); *see Black v. Wigington*, 811 F.3d 1259, 1267, 1269 (11th Cir. 2016) (determining that probable cause defeated a malicious prosecution claim and holding that the plaintiff's claim failed because the defendants were entitled to qualified immunity).

Probable cause exists "where facts, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Garcia*, 75 F.4th at 1186 (quotations omitted). In determining whether an officer had probable cause to seize a suspect, a court must "ask whether a reasonable officer could conclude that there was a substantial chance of criminal activity." *Id*. (quotations and ellipses omitted). The validity of an arrest is not dependent on the offense announced by the officer at the time of the arrest, and "[p]robable cause . . . may be found if there is probable cause to believe any crime was committed, whether or not there is probable cause for the crime the arresting officer actually believed had been committed." *Manners v. Cannella*, 891 F.3d 959, 969 (11th Cir. 2018). Further, a warrantless custodial arrest can be supported by probable cause even if the offense is minor or seemingly insignificant. *Id*.

But even without probable cause, an officer is entitled to qualified immunity from a false arrest claim if the officer had

*arguable* probable cause to arrest the plaintiff. *Garcia*, 75 F.4th at 1186. Arguable probable cause exists where "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." *Id*. (quotations omitted). Arguable probable cause is only lacking "if the state of the law on the date of the alleged misconduct makes it obvious that the officer's acts violated the plaintiff's rights in the specific set of circumstances at issue." *Id*. (quotations and brackets omitted). So, the question becomes whether the plaintiff has satisfied his burden of showing that, as a clearly established matter of law, an objective officer could not have reasonably concluded there was probable cause to arrest under the particular circumstances. *Id*.

In pertinent part, a person who commits acts that "are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them" is guilty of the Florida misdemeanor offense of breach of the peace or disorderly conduct. Fla. Stat. § 877.03. Further, a person commits the Florida misdemeanor offense of nuisance if his behavior "tend[s] to annoy the community, injure the health of the citizens in general, or corrupt the public morals." *Id*. § 823.01.

The standard by which a supervisor may be held responsible for the actions of a subordinate under § 1983 is extremely rigorous. *Piazza v. Jefferson Cty., Ala.*, 923 F.3d 947, 957 (11th Cir. 2019). Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates based on *respondeat superior*. *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). Rather,

supervisors can only be held personally liable when they (1) participate in the alleged constitutional violation, or (2) "there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 820 (11th Cir. 2017) (quotations omitted). A plaintiff can establish the necessary causal connection "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and [she] fails to do so." *Id.* (quotations omitted).

Here, the district court did not err in dismissing Counts One through Five against Officer Vogt, Officer Session and Chief Stanley in their individual capacity based on qualified immunity, since the allegations in the third amended complaint established that they had at least arguable probable cause to arrest Watkins for some crime. As for his claims against the Officers, it has been and remains undisputed that they were acting within their discretionary authority at the time of the alleged constitutional violation. Thus, Watkins bore the burden of establishing that (1) the Officers violated his Fourth Amendment right to be free from seizures unsupported by probable cause, and (2) their actions were clearly unlawful at the time of the incident. *Garcia*, 75 F.4th at 1185.

The Officers' arrest of Watkins was lawful if they had at least arguable probable cause to believe that he had committed or was committing some crime, and, notably, it does not have to be based on the offense announced at arrest. *See id.* at 1186; *Cannella*, 891 F.3d at 969. So the question is whether the Officers had

arguable probable cause to arrest Watkins for either breaching the peace or creating a public nuisance. *See Manners*, 891 F.3d at 969. Each Florida statute has a broad reach in the conduct it covers -- an individual violates either statute merely if his actions "are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness" or if his behavior "tend[s] to annoy the community, injure the health of the citizens in general, or corrupt the public morals." Fla. Stat. §§ 823.01, 877.03.

Accepting all the facts alleged in the third amended complaint as true, the Officers had arguable probable cause to believe Watkins was breaking the law or had broken the law under either statute. *Garcia*, 75 F.4th at 1186. Watkins alleged that the Lauderhill Police Department had received several anonymous reports of someone urinating and defecating in the area Watkins was found. Watkins added that he admitted at the time of his arrest to dumping his urine in the public park. It was not unreasonable for officers to believe the act of dumping urine in a public park would affect the peace and enjoyment of others trying to enjoy the area, especially considering the many recent complaints the police department had received. It was also reasonably conceivable for the Officers to believe that dumping bodily fluids in a public area could put the health of citizens at risk.

As for Watkins's claim that the Officers failed to provide any cases finding that public urination or public dumping of urine violates Florida law, Watkins himself bears the burden of showing that

a clearly established constitutional right was violated by the officers. *Garcia*, 75 F.4th at 1185–87. But he provides no caselaw supporting his claim that public urination or public disposal of urine does not violate Florida's nuisance or breach of peace statutes and that officers making an arrest under similar circumstances violated a suspect's constitutional rights. *See Wesby*, 583 U.S. at 64. And we've found nothing from the Florida Supreme Court, this Court, or the Supreme Court where an officer has been found to have violated an arrestee's Fourth or Fourteenth Amendment rights by placing them under arrest for the public disposal of urine.

Moreover, because the Officers had arguable probable cause to arrest Watkins, the district court also did not err in dismissing Count Five against Chief Stanley in her individual capacity, since that supervisory liability claim was predicated on Counts One through Four. As the record reflects, Watkins did not claim that Chief Stanley personally participated in his challenged arrest. This means that in order to support a supervisory liability claim against Chief Stanley, Watkins was required to allege sufficient facts to plausibly indicate a causal relationship between Stanley's actions and his arrest by the Officers. *Knight through Kerr*, 856 F.3d at 820. However, Watkins alleged only that Chief Stanley was the final-policymaker and effectively ratified the arrest made by the Officers. Because the Officers had arguable probable cause to arrest Watkins, he cannot demonstrate that Chief Stanley was on notice of consistent constitutional deprivations by her officers and that she failed to act. *Id*.

**II.**

We also find no merit in Watkins's argument that the district court abused its discretion by dismissing his final-policymaker claim in Count Five, against the City of Lauderhill and Chief Stanley in her official capacity. Pursuant to Fed. R. Civ. P. 41(b), if a plaintiff fails to prosecute his case or comply with a court order, a defendant may move to dismiss the action. The court also has the inherent ability to dismiss a claim in light of "its authority to enforce its orders and provide for the efficient disposition of litigation." *Zocaras*, 465 F.3d at 483. Generally, where the litigant has been forewarned, dismissal for failure to obey a court order does not amount to abuse of discretion. *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). In addition, the district court's consideration of alternative, lesser sanctions need not be explicit, if the record supports the conclusion that the court implicitly found that those sanctions would not better serve the interests of justice. *Zocaras*, 465 F.3d at 484.

Although both failure-to-train and final-policymaker claims attack the execution of a government policy or custom as defined under *Monell*, they require proof of different actions. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978) (the execution of a government's policy or custom must inflict the claimed injury for the local government to be held responsible under § 1983). To establish a failure-to-train claim, a plaintiff must demonstrate that a city was deliberately indifferent to citizens' rights by knowing of constitutional violation or a high likelihood thereof and making "a deliberate choice not to take action" in its training programs. *See Lewis*, 561 F.3d at 1293. Alternatively, the

final-policymaker theory requires a showing that "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered"[1] and that the decisionmaker made "a deliberate choice to follow a course of action" considering various alternatives with respect to the subject matter in question. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by lawyers and will be liberally construed. *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014).  Nevertheless, *pro se* litigants are required to comply with applicable procedural rules.  *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007).  Further, the leniency afforded *pro se* litigants with liberal construction "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action."  *Campbell*, 760 F.3d at 1168–69 (quotations omitted).  A district court need not allow amendment in the event of undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of the amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, we begin by noting that the district court properly dismissed Watkins's claim in his third amended complaint against Chief Stanley in her official capacity.  As the record makes clear, the district court had *already* dismissed any claims against Chief Stanley

---

[1] This Court has previously recognized that, under Florida law, police chiefs have final policymaking authority in their respective municipalities for law enforcement matters.  *See Cooper v. Dillon*, 403 F.3d 1208, 1222 (11th Cir. 2005).

in her official capacity with prejudice in its order dismissing in part Watkins's second amended complaint. At the end of that order, the district court specified that Watkins could file a third amended complaint "alleging the counts he has already advanced against the Defendants who now remain" and "will not be permitted to add new counts or defendants." This instruction was sufficient to convey to Watkins that he could only replead the counts against the same defendants that the court had dismissed without prejudice.

Moreover, when the district court later considered the Defendants' motion to dismiss Watkins's third amended complaint, it did not abuse its discretion in dismissing Count Five against the City of Lauderhill and Chief Stanley in her official capacity for failure to follow the court's order. Indeed, the court's earlier order expressly cautioned Watkins that he would "not be permitted to add new counts or defendants" and was only allowed to "take his best crack" at reasserting the claims he had already alleged. Nevertheless, while Watkins had asserted a failure-to-train claim in his second amended complaint, he asserted a final-policymaker claim in his third amended complaint. The court correctly determined that those were two unique claims because they required proof of different elements. *See Pembaur*, 475 U.S. at 483; *Lewis*, 561 F.3d at 1293. Thus, by asserting the final-policymaker claim in his third amended complaint, Watkins directly violated the court's order.

Although dismissal with prejudice is an extreme measure, the district court was simply enforcing its previous instruction for Watkins not to add any new claims in his third amended complaint.

It reasoned that dismissal was the only appropriate sanction to remedy Watkins's repeated disregard of the court's instructions, and it was not required to explicitly consider lesser alternative sanctions. *See Zocaras*, 465 F.3d at 483–84.  Although *pro se* pleadings are held to a less stringent standard than those prepared by counsel, the district court had given Watkins multiple opportunities to amend his complaint to state a plausible cause of action.  *See Campbell*, 760 F.3d at 1168.  The court did not abuse its discretion in determining dismissal was appropriate because Watkins's final-policymaker claim would likely require additional discovery, which would expend additional time and resources even though the discovery period had closed two years prior to this new claim being raised.

The court also was within its discretion to prohibit further amendment of the complaint because it found it would have been futile at such a late stage of the case and would result in undue prejudice to the Defendants. *Foman*, 371 U.S. at 182.  Moreover, Watkins was forewarned, after receiving *three* opportunities to amend his complaint, that the next dismissal would be with prejudice, and Watkins still failed to heed the court's unambiguous instruction.  *See Moon*, 863 F.2d at 837.

Accordingly, we affirm the district court's dismissal of Watkins's third amended complaint.

**AFFIRMED.**